Good morning. May it please the court. My name is Jack Hathaway and I'm here for the appellant and defendant, Mr. Pacheco-Poo. Our claim for relief is straightforward. The court ordered that my client be released pre-trial. The federal government refused to release him and we ask that the case be dismissed. The federal government said they were detaining him to imminently deport him, all the same. If they deport him and remove him from the country, they can't proceed on the indictment anyway. This falls from the Bail Reform Act itself. When, as here, a non-citizen poses no flight or flight risk or danger to the community and immigration does not pick him up during a temporary detention period, the federal executive, including immigration, must adhere to a pre-trial release order under the Bail Reform Act. This is so even if he has a previous removal order. The BRA is supposed to make pre-trial detention the exception and not the rule in federal criminal proceedings. It applies to non-citizens and citizens alike. Don't they cover different things though? I mean, doesn't the Bail Reform Act apply to the judge's power to keep an immigrant pending criminal proceedings and the Immigration and Nationality Act is aimed at executive officials and their authority? I mean, don't they cover completely different things is really what I'm asking. Different people, different things. If the subject matters of the Immigration and Nationality Act are distinct from the Bail Reform Act, yes, I would say they are. But I would say also that in subsection 3142D of the Bail Reform Act, you have the presentation from Congress of the interaction you have between the Immigration and Nationality Act and the Bail Reform Act. In that section, it states that, well, what I said, if a person is a possible flight risk or a possible danger to the community and they are a non-citizen or non-lawful permanent resident, immigration has 10 days to pick them up. If they don't do that, then the BRA controls that person's pre-trial detention or release, and then quote, notwithstanding the applicability of other provisions of law. Do you think the notwithstanding really refers to the 10-day clause? Follow me out. You read notwithstanding as really applying to all the other laws that there might be. But it says notwithstanding other provisions of law about release and pending. Are they really trying to talk about that? Is Congress really addressing the 10 days and the previous clause? I believe, yes, it does. Well, it does both. It references back to the 10 days, and then what it's referencing is, I guess, what I think it says, which is notwithstanding any laws regarding deportation or exclusion proceedings. The 10-day clause seems to be a trigger for this subsequent clause that's the notwithstanding part of the allow for pre-trial release during federal criminal proceedings. And this is even with an outstanding removal order. And they tell the federal executive to prioritize pending criminal prosecution. Removal during pre-trial proceedings is not mandatory. Although under the INA, there is normally a 90-day removal period after removal order. This isn't triggered until after the person is released from detention or confinement. And then as the court recognized in Trujillo v. Alvarez, detention or confinement can only be reasonably read to mean incarceration or after final judgment, which of course has not happened yet in pre-trial proceedings. Even if that removal period were running during someone's pre-trial release from federal criminal proceedings, it's not mandatory under the INA that that person be detained either. Under 1231, provides for non-citizens to be, 1231 being the removal statute, my apologies, but it allows for people to actuate removal from the United States by leaving them on their own voluntarily or by being removed by the federal government physically. And the person with the removal order is only not allowed to be released if they have been found removable under certain grounds of criminal removability or terrorist removability, not applicable in this case. Immigration regulations further indicate that once the federal executive commits to federal prosecution of a non-citizen, the criminal case takes precedence over removal. That's in 8 CFR 215.2a, states no alien shall depart from the United States if his departure would be prejudicial to the interests of the United States under provision 215.3, which in turn defines that prejudicial for the United States as having a pending criminal case with any court in the United States unless the prosecuting authority consents to you being removed. So with that, the federal executive violated the BRA and the magistrate's order under it. The defendant was not a flight risk, it was not a danger to the community, and ICE did not temporarily, did not detain him during a temporary detention period under 3142d. So magistrate ordered his release pretrial under the BRA, deportation law notwithstanding, and the federal executive nonetheless did not release him and continued to detain him allegedly for deportation purposes. But that was not an excuse under the BRA and it was not necessary under immigration law. We believe that the proper remedy for this violation was to dismiss the indictment. The BRA and magistrate's order dictated the defendant's release. ICE had discretion under the INA to detain or remove him or not. We just asked that the court apply a remedy that protects defendant's rights under the BRA and constitutionally. I can dismiss the indictment to implement a remedy for violation of recognized rights or to deter legal conduct. Here, the federal executive violated my client's rights under the BRA. And as numerous district courts have recognized, when ICE, when you have a federal pending, a pending federal criminal proceeding and ICE is moving your client from ICE detention facility to ICE detention facility and in whichever place they may take him, it runs a big risk of interfering with his due process right to prepare a defense or his ability to reasonably consult with counsel. Which can be brought to the attention of the court, right? I'm sorry. Which can be brought to the attention of the court? Question mark. Yes, I suppose it could. Thank you. What do you do with the four circuit cases that have decided adversely to you? What's wrong with their analysis? And maybe you just say, reference my earlier statements, but is there anything in particular that they missed? There's, well there's a few things I think they missed. I think the most salient one that I think they missed is just their analysis of, I think, what is the crux of our argument, which is 3142D itself. And they interpret it as a solely a notice provision. And the primary case the district court relied upon from Judge Strand in the District of Iowa said the same thing. And I think that's a they say, I'm sorry, just their argument is or their analysis is that what the notwithstanding language does is it limits the judge in terms of what they can consider in making the release decision under the VRA. The problem with that is that the notwithstanding language is not limited to just subsection G, which is what they're talking about. It's the actual factors that the judge considers and whether or not they're going to release the defendant. The notwithstanding language applies explicitly to the entirety of Section 3142. And that includes the release provisions. And that's A through C. And so belittling it to just being this little notice provision, I think, is inaccurate when you look at the statute. That would probably be my biggest problem with those cases. But I could reserve the rest of my time for rebuttal. Thank you. You may. Mr. Tweed. May it please the court. I'm Dan Tweed, representing the United States in this case. In this case, Mr. Pacheco Pooh was detained, not under 3142D, but he was detained and had a Bail Reform Act hearing. The release and turning over the district court or by the magistrate judge. In fact, during the detention hearing, when the government pointed out that the defendant would be detained on an ICE detainer, defense counsel said that's fine. We understand that. We've discussed it. If they deport him, that's the government's choice. But we understand what we're doing here and we're not objecting to dismissal of the indictment. Here, under 3142, even though it doesn't apply in this case because it was not relied upon to detain the defendant, I think it also shows generally that Congress understood that there are various entities that may have an interest in a person, in a defendant. 3142D1 says that covers anyone who is pending release, who is on release for any reason in federal, state, or local law violations. 3142D2 refers to aliens or citizens not of this country who might have an interest in a district court in, say, the District of Minnesota versus the District of Iowa. Come and get this guy if you want him because you've got him on some violation. And then you have the notwithstanding. Nobody comes and picks him up. Then you have notwithstanding. What do you do? We're not going to look at the ICE detainer. We're not going to look at the reasons that ICE may have for detaining. We're not going to look at the reasons that the other federal district court may have for detaining. We're going to look at what is presented before us here, notwithstanding what might be presented in other courts. But what do we have to look at here, whether or not he's a risk of flight or a danger to the community? Here, the judge found that point and released him, notified the community. We have a question about detention. When does that detention 90-day period start? The 90-day period starts from release from detention or confinement. One of the lower court cases, district court cases, talks about the, it must mean release from a judgment. Well, the problem with that is that under Title 8, I'm so used to Title 18, Title 8, Section 1231A4A, it says that the defendant can be removed. It says the attorney general may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment, which shows that they have a different meaning in the same statute, the same code section for detention and confinement versus release from imprisonment. So when you look at detention or confinement, the 90-day period can start upon the defendant's release from pretrial custody because you could have the other provisions kicking into gear, final order by the immigration judge, but the guy might be in pretrial custody in some state case. Well, that order is not going to kick in until he's released. We're not waiting for a judgment or a release from imprisonment. We're waiting for him to be released from confinement. So there's two different uses. So if the Congress wanted to intend that the 90-day period started from the date of release from the departure, under the CFR 215.2, we have a departure control officer. If they can stop someone at the border from leaving on their own, and 215.3 talks about ways in which the departure control officer can stop someone at the border. One of the reasons is if the prosecuting authority says, hey, this person's out, please stop them, don't let them go. But then under 215.3J, it says if the departure control officer is not sure that the person is leaving voluntarily, again, crossing the border, maybe they're being kidnapped, maybe there's some reason they want to hold them, it says the departure control officer can stop them at the border. Then they have a right to a hearing and everything else. They have to have an order issued and everything else. But in 215.3J, it says, oh, this doesn't apply, though, if somebody is leaving under an order of departure. They have a voluntary departure. So when you're in immigration court, they basically have two ways, there are many ways, but two ways to depart. You're in custody, and we remove you. Or sometimes they'll say, you're ordered departed, you're ordered removed. We're going to give you a month or so to clean up your act, get your affairs in order, and then you have to leave under this We don't have this situation here because our person is not on his own. He's not on release. He's not free from custody. So what do we have in the statute? The statute, 1231, again, A4A, talks about arrested aliens, imprisoned, arrested or on parole, supervised release, or probation. And that says, again, you can remove them any time after they're released from a sentence of imprisonment. Now, there are ways they can try and kick them out earlier by working with authorities. But it says, once you're out, we can remove you. And it says parole, supervised release, probation, or possibility of rest or further imprisonment is not a reason to defer removal. So immigration is going to kick them out whether or not, there's no provision there for the prosecuting authority to delay. Let me interrupt you to say, there are cases, as you know, particularly the Second Circuit has talked about the possibility of detention being pretextual, bad faith, those sorts of arguments, so that I guess the INA would be acting against the magistrate judge, I guess. Do you, the United States, argue that this has an exception to it, despite your black letter argument so far, for pretext, bad faith, or something like that? All I know is that if there was a way for me to stop that person from leaving, I tried everything I could. Now, I'm not sure how to exactly answer your question. You're familiar with the case law, right? Because I started at the end of the case law. Go ahead. But here, the court was aware that another defendant in our district had been removed pending trial because he went into ICE custody. The court found that the Bail Reform Act and the Immigration Act, those are separate reasons for their existence, separate bail determinations. Here, with a prior removal, a reinstated order of removal, mandatory detention, the statute shows they're going to kick him out whether or not I ask for it or not. The West law is littered with cases of district court cases where prosecutors are dismissing cases because they've been removed. You might have some bad faith. Now, I think the bad faith would be if I kept him here somehow to avoid, if I could delay deportation, well then it might be looking like I'm using, I'm going around the Bail Reform Act. Here, I have no way to stop it. But if I could stop it, then they might be saying, well, now you're violating the Bail Reform Act because you've been able to lock him up under immigration and now immigration's working with you to delay. So, you're putting the catch-22 if immigration doesn't stop him. So, you believe there is a possibility of that kind of exception to the black letter reading you're giving us? There could be. I don't know. I haven't had a thing on that. I would just ask, my time is up, but I would just ask that this court to go along with the four other circuits, the 2nd, 3rd, 6th, and the D.C. Not create a circuit split, but also, like the 3rd Circuit, which cited the district court case in this particular group. You get a sentence at the zero and you're exceeding it. Thank you very much. Mr. Hathaway, we're back to you. Just to address a couple of those points, for the confinement detention issue, it's somewhat distinct when you have a reinstated removal order because the 90-day period under 8 U.S.C. 1231 doesn't actually exist for a reinstated removal order. They can be removed at any time. So, this clock that is imaginary that they have to reward him within such and such a period of time does not exist in this case. Regarding departures and the federal regulations, just to clarify, immigration courts frequently do, and 1231 allows them to let people leave the immigration court with a removal order and detain themselves of their own accord. You do not have to be physically detained to be removed. Voluntary departure is a different legal construct that just limits your immigration consequences in the future. And finally, I'm out of time, but we ask any alternative, if the indictment isn't dismissed, that we be granted an evidentiary hearing for contested issues of fact that were raised subsequent to our motion in the district court's decision. Thank you for your time. Thank you very much. Case number 19-1357 is submitted for decision by the court. That concludes our calendar, and we'll stand in recess until 8.30 tomorrow morning.